NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAROLYN RUBIN, : | |
| : | Civil Action No. 08-6175 (SRC) |
| Plaintiff, : | |
| : | **OPINION** |
| v. : | |
| : | |
| SULTAN HEALTHCARE, INC., et al., : | |
| : | |
| Defendants. : | |

**CHESLER**, District Judge

      This matter comes before the Court upon the motions to dismiss Counts Five and Six of the Complaint[1] filed by Defendants Dentsply International, Inc. ("Dentsply") and Christine Coulman-Smith [docket item no. 13] and by Defendant Sultan Healthcare, Inc. ("Sultan") [docket item no. 15] (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Though Defendants filed separately, the matters and arguments overlap, and the Court will therefore refer to their filings as a single motion for purposes of clarity). Plaintiff Carolyn Rubin ("Plaintiff" or "Rubin") has opposed this motion. After the motion was fully briefed, Plaintiff voluntarily dismissed Count Six of the Complaint, and thus that portion of the motion is moot. The Court has considered the papers submitted and rules based on those submissions

---

[1] After this motion was filed, Plaintiff filed an Amended Complaint [docket item no. 30] to plead diversity jurisdiction. Because the substantive causes of action pled remain the same, the Court treats the motions to dismiss as pertaining to the Amended Complaint. The Opinion will refer to the operative pleading simply as the "Complaint."

pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, Defendants' motion will be denied without prejudice.

**I.     BACKGROUND**

This action arises out of the allegedly wrongful and retaliatory termination of Plaintiff Rubin's employment. The following facts are drawn from the Complaint, and the Court assumes their truth for purposes of this motion only.

Rubin was employed by Defendant Sultan as a Sales Territory Manager from approximately April 10, 2005 through January 17, 2008. She worked in Italy, selling Sultan's products to distributors. Plaintiff alleges that she repeatedly objected to various actions Sultan took or failed to take regarding her employment, including failing to provide her with a contract that would allow her to renew an authorization required by the Italian government for Plaintiff to stay and work in Italy lawfully. She further alleges that, in a December 2007 meeting arranged by Sultan, she and a representative from Dentsply (which, according to the Complaint acquired Sultan, in June 2007) met to discuss the proposition of Dentsply employing her for the convenience of Sultan.

Rubin's employment contract with Sultan expired on January 18, 2008. She alleges that Sultan informed her that it did not wish to renew the contract, in part due to her complaints about the contract. Her employment with Sultan thus terminated on January 18, 2009. Dentsply did not offer Rubin employment.

On December 15, 2008, Plaintiff filed this action in the United States District Court for the District of New Jersey.  The Court has subject matter jurisdiction over this action on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332.  Based on the alleged wrongful termination of Plaintiff in retaliation for her complaints about Sultan's failure to cooperate in the renewal of her Italian work visa, the Complaint asserts claims under the Conscientious Employee Protection Act, N.J.S.A. 34:19-5, et seq. ("CEPA") and under New Jersey common law for violation of a clear mandate of public policy, pursuant to Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980).  Defendants move to dismiss the Pierce claim as barred by the CEPA claims.

## II.     LEGAL ANALYSIS

### A.     Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests.  Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint will survive a motion under Rule 12(b)(6) only if it states plausible grounds for plaintiff's entitlement to the relief sought.  Id. at 1965-66 (abrogating Conley's standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").  In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level.  Id. at 1965.  The issue before the Court "is not whether plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence in support of the claims." Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

     **B.**     **Discussion**

The issue before the Court is a narrow one: Can Plaintiff plead for relief for the alleged retaliatory termination of her employment under the alternate theories of CEPA and the common law, or must she elect the cause of action on which she will pursue a remedy at the pleading stage of the case? The question centers on CEPA's waiver provision. It provides:

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that **the institution of an action in accordance with this act shall be deemed a waiver** of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law.

N.J.S.A. 34:19-8 (emphasis added).

The parties agree that, under the waiver provision, a plaintiff cannot recover for an allegedly wrongful or retaliatory termination of employment under both CEPA and the common law and must elect which claim to pursue. Defendants move to dismiss the Pierce common law claim by arguing that the election has already been made. In other words, they argue that by filing a Complaint that pleads CEPA claims, Plaintiff has "instituted" a CEPA action and thus, by operation of the statutory provision quoted above, has waived all other remedies, including any remedy pursuant to common law. Plaintiff counters that the election need not be made until later in the case, at some point before trial but after Plaintiff has had the opportunity to take

4

discovery.

The law is clear that the waiver provision precludes a plaintiff from "pursuing both statutory and common-law retaliatory discharge causes of action." Young v. Schering Corp., 141 N.J. 16, 27 (1995). The provision deems "parallel claims based on those [common law, statutory or contractual] rights, privileges and remedies . . . waived because they represent multiple or duplicative claims based on retaliatory discharge." Id. at 29. Though the waiver provision states that the waiver takes effect upon the "institution" of a CEPA action, the New Jersey Supreme Court has not construed what the term "institution" means as used in the provision. See id. at 32 (expressly stating that the question of when statute would deem the election of remedies to be made was an open one "not decided in this case."). In the absence of a controlling decision from the state's highest court on an issue of state law, a federal court sitting in diversity must predict how the court would rule by considering the relevant decisions of the state's appellate courts. Werwinski v. Ford Motor Co., 286 F.3d 661, 670-71 (3d Cir. 2002); see also Robertson v. Allied Signal, Inc., 914 F.2d 360, (3d Cir. 1990) (holding that in making such predictions, role of federal court "is not to form or create state law but to decide the case as [the court] believe[s] it would have been decided by the state's highest court had the case arisen in the state court system.").

In Young, the New Jersey Supreme Court did, however, comment that as used in the CEPA waiver provision, the language "'institution of an action' may be susceptible of meaning something other than the filing of a complaint" and instead contemplate the election of remedies after discovery is complete. Young, 141 N.J. at 32. The Young court's dicta guided the New Jersey Appellate Division's interpretation of the phrase "institution of an action" in Maw v.

5

Advanced Clinical Communications, Inc., 359 N.J.Super. 420 (App. Div. 2003), a case which this Court finds instructive.  There, the court directly addressed the question of when in a lawsuit the waiver provision would deem a plaintiff's decision to pursue a CEPA claim to have waived his or her right to seek relief on a common-law claim for retaliatory discharge.  Maw v. Advanced Clinical Comms., 359 N.J. Super. 420, 440 (App. Div. 2003), rev'd on other grounds by 179 N.J. 439 (2004) .  The Maw appeals court expressed its concern that while the statute clearly required the an election of remedies, it was not apparent that the election had to be made at the pleading stage.  Id. at 440-41.  The trial court had dismissed the plaintiff's common-law claim for wrongful retaliatory discharge based on the CEPA waiver provision.  Id. at 440.  On review of the dismissal, the Appellate Division observed that while "[c]ommon-law claims of wrongful discharge in violation of public policy . . .  are routinely dismissed under CEPA's exclusivity provision," this usually occurs "at later stages in the litigation."  Id. at 441.  Finding that the common-law wrongful discharge claim should be re-instated as prematurely dismissed, the Maw court reasoned as follows:

> Although none of the cases cited specifically address at what point the election must be made, *Young* is instructive. The Court found the election needed to be made "once a CEPA claim is 'instituted.' " *Id.* at 29, 660 A.2d 1153. However, in discussing the meaning of "institution of an action," the Court noted that "[t]he meaning of 'institution of an action' could conceivably contemplate an election of remedies with restrictions in which the election is not considered to have been made until discovery is complete or the time of a pretrial conference contemplated by Rule 4:25-1. Another question is whether the statutory waiver is applicable if the CEPA claim is withdrawn or otherwise concluded prior to judgment on the merits." *Id.* at 32, 660 A.2d 1153. **We take this language to mean that before electing remedies, a plaintiff should have an opportunity to complete discovery.** Only after gaining access to all of the facts, will a plaintiff be in a position to make a knowing and meaningful election. Here, plaintiff was not given that opportunity. As such, we also reinstate

> plaintiff's common-law claim.

Id. at 441 (emphasis added).

Though Defendants attempt to diminish the Appellate Division's discussion in Maw as dicta, the court's reasoning is clearly central to its decision to reverse the trial court and reinstate the common-law Pierce claim for wrongful discharge in violation of public policy. The Supreme Court subsequently reversed the Appellate Division's decision in Maw on grounds unrelated to the issue of whether a plaintiff may plead in the alternative for relief under CEPA and the common law and elect his or her remedy later in the litigation. Maw v. Advanced Clinical Comms., 179 N.J. 439, 445-46 (2004). The Supreme Court's opinion focused on the CEPA claim's deficiency for failure to plead that the discharge was related to complained-of activity with public ramifications, as opposed to a mere private disagreement between the plaintiff and her employer. Id. Though Defendants argue that the Supreme Court failed to adopt the Appellate Division's statutory interpretation regarding the election of remedies under the CEPA waiver provision, the Supreme Court's holding that the claim was not viable as pled obviated the issue. From this Court's review of the Supreme Court's Maw opinion, the majority left the Appellate Division's analysis undisturbed. The Maw dissent, however, expressed its opinion that the litigated dispute - specifically, the plaintiff's discharge allegedly as a result of her refusal to enter into an employment contract containing a non-compete covenant - did carry public policy implications and thus adequately supported causes of action under CEPA and Pierce. Id. at 459-60 (Zazzali, J., dissenting). In so doing, the dissent wrote that it would affirm the Appellate Division's judgment and allow both the CEPA claims and the common-law Pierce claims to go forward. Id. at 459. Implicit in that discussion is the view that the CEPA waiver provision does

not bar a Pierce claim at the pleading stage, as Defendants now urge this Court to hold.

This Court has reviewed the decisions, cited by the Defendants, in which others on the court of this district have held that the filing of a CEPA claim constitutes the "institution of an action" and thus precludes a plaintiff complaining of wrongful retaliatory termination from alternatively pleading for relief under the common law. Based on its understanding of New Jersey state caselaw on this issue, this Court respectfully disagrees. Guided by the on-point analysis of the New Jersey Appellate Division in Maw , the Supreme Court's dissent in that case, and the above-quoted dicta of the Supreme Court in Young, this Court holds that Plaintiff has not waived her Pierce claim by merely filing a Complaint which pleads for relief under the alternative CEPA theory. This Court predicts that New Jersey's Supreme Court would hold that the CEPA waiver provision would not require a plaintiff to elect her remedy at the pleading stage of the litigation but rather defer the waiver until the plaintiff has had an opportunity to conduct discovery.

Accordingly, Defendants' motion to dismiss Plaintiff's Pierce claim will be denied. This denial, however, will not prejudice Defendants from bringing a renewed motion under Rule 12 for judgment on the pleadings or a Rule 56 motion for summary judgment once discovery has concluded.

### III.　CONCLUSION

For the foregoing reasons, this Court will deny Defendants' motion to dismiss without prejudice.  An appropriate form of order will be filed together with this Opinion.

s/ Stanley R. Chesler<br>
STANLEY R. CHESLER<br>
United States District Judge

DATED: May 15, 2009

9